**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CR-05-141ML |
| | : | |
| HECTOR OLIVA | : | |

# GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

## I. INTRODUCTION

The defendant, Hector Oliva ("Oliva"), is an alien illegally present in this country. He was previously deported after convictions for receiving stolen goods, robbery, felony assault, conspiracy, and possession of a stolen motor vehicle.

After his original deportation, Oliva was discovered to be illegally present in this country again by an officer of the Cranston Police Department during a motor vehicle stop. During the course of that traffic encounter, Oliva initially made statements concerning his identity which proved to be untrue. Oliva was temporarily detained while his identity was ascertained. He was provided with his Miranda warnings and after Oliva fully confessed his identity, Cranston Police notified the Bureau of Immigration and Customs Enforcement ("BICE"). When BICE took custody of Oliva, he was again provided with his Miranda warnings and again confessed his true identity.

Oliva now seeks to suppress the statements he made to the Cranston Police Department claiming that he was not properly advised of his rights. Oliva complains that, if the Cranston Police Officer advised him of his rights at all, it was not in Spanish. Oliva requests that the court suppress all statements that he made to the Cranston Police on December 12, 2005. He does not, and could not, move to suppress the statements he made to BICE.

The United States maintains the statements were properly obtained by the Cranston Police Department and are not subject to suppression. However, that is not an issue worth litigating.

Oliva's illegal presence in this country is a continuing offense. His identity is easily and inevitably discovered and proven through a fingerprint comparison. The statements he made to the BICE agents, which he does not seek to suppress and which were obtained after being provided with written Miranda warnings, in English and in Spanish, are all properly admissible. The government can easily prove the case against Oliva based on his statements to BICE and fingerprint identification. To look at it another way, even if the Court were to suppress the statements made to the Cranston Police Department, even if that suppression of the evidence rendered this case nonprosecutable, even if the government were required to dismiss the case, or the Court did so on its own, Oliva would be properly rearrested as he left the Federal Courthouse, would be refingerprinted, and would still be subject to

prosecution and deportation. The only issue in the balance is whether the government will use Oliva's confession to Cranston Police at his trial.

II. FACTS

On December 12, 2005, at approximately 1:21 a.m., Officer David C. Jubinville of the Cranston Police Department observed a green Ford Windstar minivan bearing Rhode Island license plate FK-626. He quickly determined that that license plate was actually registered to a 1992 blue Nissan automobile registered to a William Garcia. Officer Jubinville conducted a motor vehicle stop on Union Avenue.

The operator identified herself as Jennifer Allen and was asked to produce a license, registration, and proof of insurance. Although Ms. Allen did provide a valid Rhode Island operator's license, she was unable to provide other documentation. Officer Jubinville noted that there were a total of four occupants inside the vehicle including Oliva. Oliva was seated in the back seat. He and the other back seat passenger were fidgeting as though attempting to hide something. Officer Jubinville asked both individuals in the back seat to keep their hands visible and one responded, "Chill out man, we ain't doing nothing." Officer Jubinville asked the operator if there was anything illegal inside the vehicle and she replied that she did not know. The Officer then asked the two men in the rear seat to produce identification. One did. Oliva could not.

Oliva verbally identified himself using the name "Alexander" Oliva and provided an address. Officer Jubinville checked with his police department and was advised that there was no record of a subject by that name at that address. He asked Oliva again to identify himself. This time he identified himself as "Leo" Oliva. Again the name did not check out.

Oliva was asked to step from the car. Oliva claimed that he had a document bearing his identification at home. Officer Jubinville told Oliva that he would drive him to his home so he could show him the identification. There, Oliva produced a driver's license in the name of Alexander G. Oliva. A DMV check on the license number disclosed that the license was actually issued to an individual named Franco Marrifano of Greenville Avenue in Johnson. The Officer further determined that the license was issued to a 16 year old individual. Oliva claimed not to know Marrifano.

Due to his continued inability to identify Oliva, Officer Jubinville temporarily detained him at the police department. Though not technically under arrest, Oliva was provided with his Miranda rights anyway. Oliva said he understood. Oliva then said that he had nothing to hide and would answer any question posed to him.

Office Jubinville asked Oliva if he had provided his true identity. Oliva again lied, indicating that he had. The Officer asked Oliva if he ever been arrested before. Oliva falsely stated

that he had not. Officer Jubinville asked Oliva if he knew his social security number. Oliva provided one. The social security number that Oliva provided was issued to an individual named Lusbin Maloini for whom there was an active arrest warrant.

Officer Jubinville also learned that the wanted individual, Lusbin Maloini, had at least six aliases associated with that name including Hector Oliva. When confronted with this new information, Oliva admitted that his name was Hector Oliva not Alexander Oliva or Leo Oliva. He told the officer that he had obtained the license with counterfeit information and that the last valid license that he had had been lost when he was previously deported from the United States. Oliva then admitted that he had not gone through the necessary steps for reentry into the Untied States and that he was in the country illegally. Oliva further admitted that he was the individual that had been previously arrested and convicted for robbery, conspiracy, and other crimes. He also admitted that he had been lying about his identity and that the other names were aliases that he had falsely provided in the past.

Based on that information, Officer Jubinville notified BICE. He was informed by the Duty Agent that a BICE agent would take Oliva the next morning.

Immigration agents did take Mr. Oliva into custody and transported him to their office in handcuffs. He was interviewed after being provided with his Miranda warnings. Oliva was provided with Miranda warnings in writing in English and in Spanish

(copy attached as Exhibit 1). First the BICE agents conversed with Oliva in his native language, Spanish. Once he demonstrated some proficiency in English they conducted the interview in English. During the ensuing interview, which was conducted by a Spanish speaking agent and an English speaking agent, Oliva fully admitted his true identity, told the agents that he was a native of Guatemala, admitted that he first entered the country illegally by crossing the border near Brownsville, Texas, and that he had been previously deported.

III. ARGUMENT

The United States maintains that the statements that Oliva made to the Cranston Police Department were properly obtained. Oliva was not under arrest and did not even require Miranda warnings but they were administered anyway. Under Rhode Island law a temporary detention for the purpose of ascertaining a person's identity is specifically permitted. See RIGL § 12-7-1 (copy attached as Exhibit 2). However, as a matter of judicial economy, the United States will agree not to use those statements at Oliva's trial simply in order to avoid the necessity of a hearing in this matter.

The United States does not waive any rights that it may have to utilize this evidence should the need unexpectedly arise. The United States understands that it assumes a risk that double jeopardy would preclude an appeal if this matter is not decided pre-trial. In the current posture of the case, the statements are

merely cumulative and are not necessary to prove the identity of the defendant or his illegal presence in this country. The defendant does not attempt to suppress, nor could he, the statements made to Immigration officials. His fingerprints alone are sufficient to establish his illegal presence in this country. Under the circumstances, contested litigation of the suppression issue is not necessary, at this time.

IV. CONCLUSION

The United States therefore respectfully suggests that given its agreement not to use the contested evidence, this matter may pass without hearing or ruling on the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

GERARD B. SULLIVAN
Assistant U.S. Attorney
RI Bar No. 3134

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 13th day of February, 2006, a copy of the within Government's Objection to Defendant's Motion to Suppress Evidence, was mailed by first-class mail, postage prepaid, to:

James T. McCormick, Esq.
128 Dorrance Street, Suite 330
Providence, Rhode Island 02903

Paulette E. Gamache