**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CR. No. 05-141ML** |
| **HECTOR OLIVA** | : | |

**GOVERNMENT'S SUPPLEMENTAL OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

## I. <u>Introduction</u>

On January 27, 2006, the defendant, Hector Oliva ("Oliva") moved to suppress evidence obtained by the Cranston Police Department on December 12, 2005. The government responded by agreeing not to use the statements made to the Cranston Police Department.

This is an illegal reentry case. The government was content to based its case in chief on a fingerprint comparison and on the statements Oliva subsequently made to agents of the Bureau of Immigration and Customs Enforcement ("BICE"). The government agreed to forego using the statements made to the Cranston Police Department, not because they were improperly obtained, but merely to avoid the necessity of a hearing and promote judicial economy.

On February 14, 2006, Oliva responded to the government's largess by expanding his motion to include the statements made to BICE Agents, newly proclaiming that those statements were the "fruit of the poisonous tree." It now appears that a hearing is unavoidable.

The United States rescinds its previous agreement to forego using the statements to the Cranston Police Department. They were properly obtained. Those statements were made after the appropriate provision of Miranda warnings to Oliva and in any event were not the result of custodial interrogation.

Even if the statements made to the Cranston Police Department were obtained in violation of Oliva's constitutional rights, the later statements made to BICE Agents, the following day, after he was transferred into their custody, and was provided Miranda warnings, in English and in Spanish, verbally and in writing, were sufficiently attenuated to defeat the fruit of the poisonous tree doctrine.

## II. **Argument**

### A. OLIVA WAS PROVIDED WITH MIRANDA WARNINGS

It appears that Oliva claims that he was not provided with his Miranda warnings by the Cranston Police Department or, if he was provided with his Miranda warnings, they were not provided in his native language, Spanish. The facts surrounding this motor vehicle stop were fully set out in the government's original

memorandum. As indicated, the government maintains that Officer Jubinville did provide the defendant with his Miranda warnings prior to questioning. The warnings were provided verbally and in English. As further described in the statement of facts, the government maintains that Oliva demonstrated sufficient proficiency in English to Officer Jubinville and to two BICE Agents, both of who were proficient in Spanish, to sufficiently apprise Oliva of his constitutional rights.

All of these issues, factual in nature, obviously require a hearing. However, they are not outcome determinative because the defendant was legally not entitled to Miranda warnings and even if he were, he was provided with those warnings again in English and in Spanish verbally and in writing after his transfer into the custody of BICE.

B. OFFICER JUBINVILLE WAS NOT REQUIRED TO GIVE OLIVA MIRANDA WARNINGS PRIOR TO ASKING HIM TO TRUTHFULLY IDENTIFY HIMSELF BECAUSE HE WAS NOT IN "CUSTODY" AT THE TIME HE PROVIDED IDENTIFYING INFORMATION TO THE OFFICER

Oliva's threshold argument is that either Officer Jubinville did not give him his Miranda warnings or provided them in a language he did not understand. All of his suppress claims depend on the success of this threshold argument. Yet it is well settled that the Miranda doctrine "applies only to custodial interrogations." United States v. Melendez, 228 F.3d 19, 21-22 (1st Cir. 2000). Outside the "narrow context" of custodial

interrogation, "Miranda has no force." Id. At 22. Here, the defendant was not in "custody" at the time Officer Jubinville asked him about his identity.

Whether a defendant is in "custody" for Miranda purposes turns on "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Jones, 187 F.3d 210, 217-18 (1st Cir. 1999) (quoting Stansbury v. California, 511 U.S. 318, 322 (1994)). Determining whether this standard has been met requires "a fact specific inquiry, evaluating all of the circumstances surrounding the incident." Id. At 218. The First Circuit has identified the following factors as relevant to a "custody" analysis: "'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation.'" Id. (quoting United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987)).

Oliva argues, by implication, that he was in custody at the time he made inculpatory statements. Nowhere in his motion does Oliva describe, or attempt to describe, the circumstances under which he gave those statements. Nor does he actually make a claim that he was in custody. Because the legal argument that Oliva is advancing necessitates a finding by the court that he

was in custody the government will address this issue.

Officer Jubinville encountered Oliva during the course of a motor vehicle stop during which Oliva plainly misidentified himself. When confronted with this information, Oliva offered that he could prove his true identity by providing a document which was kept in his home. Officer Jubinville told Oliva that he would drive him to his home so he could show him the identification. There Oliva produced a driver's license in a fictitious name.

At this point, Officer Jubinville had a right under Rhode Island law to temporarily detain Oliva until he was satisfactorily identified. See RIGL § 12-7-1 (copy appended to original memorandum). Oliva was not formally arrested but merely transported to the police station so that a further inquiry could be made into his true identity. Although there is a factual dispute as to whether Miranda was provided at that time in a manner which could be understood by Oliva, Oliva never-the-less volunteered that he had nothing to hide and would answer any question posed to him. It was not until he provided a social security number, that linked to an alias, that further linked to Oliva's true identity that Officer Jubinville developed probable cause to arrest him.

C. OLIVA'S SUBSEQUENT ADMISSIONS TO BICE AGENTS CONCERNING HIS IDENTITY ARE ADMISSIBLE BECAUSE THOSE ADMISSIONS WERE PRECEDED BY MIRANDA WARNINGS AND HIS EARLIER STATEMENT, EVEN IF UNWARNED, WAS VOLUNTARY

First Circuit authority is clear: "[w]hen a defendant's initial statement is obtained in violation of Miranda, the admissibility of a subsequent statement made after Miranda warnings is governed by Oregon v. Elstad." United States v. Esquilin, 208 F.3d 315, 319 (1st Cir. 2000). Under Elstad, the second statement is admissible if (1) the first statement obtained in violation of Miranda "is nevertheless voluntary" and (2) the second statement "'was knowingly and voluntarily made.'" Id. (Citing and quoting Elstad, at 309). In determining whether the second statement was knowing and voluntary, "a valid waiver of Miranda rights is normally dispositive." Id. "'A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned [initial] statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement'", and allow the admission of the subsequent statement. Id. (Quoting Elstad, at 314).

Oliva does not dispute that his second statement, that is, his statements to BICE Agents admitting his true identity, prior deportation, and criminal history were made after he had been given adequate Miranda warnings. Under Esquilin and Elstad, this resolves the issue of whether his second statement was voluntary.

The only remaining issue is whether his first statement, his statement to Officer Jubinville, even if obtained without first administering Miranda warnings, was nonetheless voluntary. It clearly was.

The mere failure to give Miranda warnings "does not, without more, make a confession involuntary." Esquilin, 208 F.3d at 321. A statement is voluntary unless it is "procured by coercive official tactics." Genao, 281 F.3d at 310 (quoting Byram, 145 F.3d 405, 407 (1st Cir. 1998)). As already stated, there was no coercion here. Officer Jubinville gave Miranda warnings which Oliva, with several previous arrests, appeared to understand. At the time Oliva provided his identifying information to Officer Jubinville, Oliva was only temporarily detained and made the statement during back and forth conversation with Officer Jubinville after stating that he had nothing to hide and was willing to talk about anything.

Accordingly, Oliva's first statement was voluntarily given. His subsequent admissions were clearly and undeniably preceded by adequate Miranda warnings. Under Elstad, the subsequent admissions are therefore admissible.

## III. **Conclusion**

For the reasons set forth above, the United States respectfully requests that the defendant's motion to suppress be denied and dismissed.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

GERARD B. SULLIVAN
Assistant U.S. Attorney

Dated: February 22, 2006

**Certificate of Service**

I hereby certify that on the 22nd day of February, 2006, a copy of the within "Government's Supplemental Objection to Government's Motion To Suppress Evidence" was mailed first-class mail, postage prepaid to:

James T. McCormick, Esquire
128 Dorrance Street, Suite 330
Providence, Rhode Island 02903

[signature]